O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHERYL JOHNSON-TATE,                      )      CASE NO. CV 12-03784 RZ
                                          )
                     Plaintiff,           )
                                          )      MEMORANDUM OPINION
          vs.                             )      AND ORDER
                                          )
MICHAEL J. ASTRUE, Commissioner           )
of Social Security,                       )
                                          )
                     Defendant.           )
                                          )

          Cases involving fibromyalgia always are tough.  The disease is real but elusive, and makes the task of the adjudicator particularly difficult.  Ultimately the decision must turn on an evaluation of the claimant's credibility, because there is very little objective evidence that an administrative law judge can rely upon.  The Administrative Law Judge here fairly summarized the evidence, but substantial evidence did not support his decision.  Accordingly, the matter must be reversed.

          In *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004), the Court of Appeals described the difficulty of assessing fibromyalgia:

          "[F]ibromyalgia, previously called fibrositis, [is] a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.

[citations omitted] Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. [citations omitted] Fibromyalgia's cause is unknown, there is no cure, and it is poorly understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms.   The American College of Rheumatology issued a set of agreed upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. [citations omitted]"

379 F.3d at 589.

The Administrative Law Judge here found that Plaintiff had the severe impairments of fibromyalgia and depression. [AR 21] Nevertheless, he found that Plaintiff could perform her past relevant work, and thus was not entitled to disability benefits.  [AR 25]  He reached this determination after first finding that Plaintiff had the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, to stand and/or walk for six hours out of an eight-hour workday, and to sit six hours out of an eight hour workday.  He acknowledged Plaintiff's need for a cane "for prolonged ambulation," restricted her from working at unprotected heights or around moving machinery or other workplace hazards, and found that she was moderately limited in her ability to perform detailed or complex tasks.  [AR 22]

The Administrative Law Judge stated that this residual functional capacity was consistent with that found by K. Wu, a Single Decision Maker at the Disability Determination Service, whom the Administrative Law Judge acknowledged was not a medical professional. [AR 23 and n.3] The Administrative Law Judge also stated that this residual functional capacity was generally consistent with that assigned by Dr. Osuji, an

orthopedic surgeon who performed a medical consultation, but that it was more generous to Plaintiff than that suggested by Dr. Osuji because it imposed greater limitations on Plaintiff's ability to lift.  [AR 23]  The Administrative Law Judge acknowledged that Dr. Yoshino, Plaintiff's treating physician, noted that Plaintiff had frequent (weekly or more) episodes that require bed rest [AR 22], but the Administrative Law Judge did not address the inconsistency between this view and the conclusion of the consultant that Plaintiff could perform a job on a full eight-hour, five day a week basis.   The Administrative Law Judge also did not address the treating physician's opinion that Plaintiff was likely to be absent more than four days a month as a result of her impairments or the need for medical treatment.  [AR 383]

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Court of Appeals described the interaction between an opinion from a consultant and an opinion from a treating physician:

> When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her own conclusions, the conclusions of the examining physician are not "substantial evidence."

495 F.3d at 632.  The Court went on to contrast that situation with the situation where the examining physician made his own independent findings, in which case the findings can stand as substantial evidence.  The Court then explained that "[i]ndependent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered . . . ."  *Id.* (citations omitted).

In this case, the consulting examiner did not make independent clinical findings.  The consultant and the treating physician both diagnosed Plaintiff as having fibromyalgia, and the consulting examiner did not identify any objective medical tests that

the treating physician had not considered.  The consultant's opinion, therefore, that Plaintiff could stand and/or walk for six hours out of an eight-hour workday, and sit six hours out of an eight hour workday — or more broadly, that Plaintiff could work an eight-hour day, five days a week — was not substantial evidence backing the conclusion of the Administrative Law Judge.

Because assessment of the impact of fibromyalgia depends on a claimant's reporting of her own subjective symptoms, however, an administrative law judge could properly reject the opinion of a treating physician if he correctly discredited the claimant's assertions as to her subjective symptoms. *Sandgathe v. Chater*, 108 F.3d 978, 980 (1997). The Administrative Law Judge here stated that Plaintiff's fibromyalgia was manageable with Lyrica, and that there was nothing "in the medical evidence" to suggest that her exacerbations of symptoms were so severe or so lengthy as to require a more limited residual functional capacity than that he identified.  [AR 23]  He also stated that Plaintiff's claims of very significant functional limitation were inconsistent with her statements that Lyrica controlled her pain, and with her repeated statements that she walks long distances on a daily basis for exercise.   [*Id.*]   These statements were not a proper basis for disbelieving Plaintiff.

If by nothing "in the medical evidence" the Administrative Law Judge meant that there was nothing objective in the medical evidence suggesting the severity of symptoms that Plaintiff described, then he erred.  *Benecke, supra*, 379 F.3d at 594 ("The ALJ erred by 'effectively requir[ing]"objective" evidence for a disease that eludes such measurement.'") (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).  If the Administrative Law Judge meant that there was nothing in the medical records to indicate the frequency or severity of the exacerbations, this too was error.  The record contains numerous instances of reporting of episodes that lasted a day or more and were in fact debilitating, including the previously-referenced report of the treating physician that Plaintiff had frequent (weekly or more) episodes that require bed rest.  [*E.g.,* AR 260, 262, 282, 284, 345]

- 4 -

Likewise, the record establishes that Lyrica was not a solution to Plaintiff's impairment. The Administrative Law Judge himself recognized this when he noted that Plaintiff's response to treatment has been "equivocal." [AR 22]  And, as the Administrative Law Judge noted, dizziness and fatigue result from taking Lyrica. He attempted to mitigate these side effects by prohibiting Plaintiff from working at heights or near hazards [AR 24] but a person who is dizzy at work still cannot perform, even if she has less of a distance to fall if the dizziness becomes too strong; the treating physician noted that when Lyrica is increased, so too is Plaintiff's dizziness. [AR 380]

As for the walking, Plaintiff testified not that it was for exercise, but that the doctor said that it was to enable her, in the long-term, to reduce the pain. [AR 51] Plaintiff also said that she hurts when she walks. [*Id.*] Thus, the walking does not indicate an inconsistency with the level or severity of the impairment; stated another way, it does not indicate that she has any more ability to sit and stand or walk in connection with a job than if she did not do the walking. On this record, it is not an inconsistency.

In short, the Administrative Law Judge did not give specific and legitimate reasons for discrediting Plaintiff's statements; in turn, the conclusions of the treating physician of the debilitating nature of the fibromyalgia were not persuasively discredited. The vocational expert testified that a hypothetical person having the limitations described by the treating physician could not perform competitive employment. [AR 63] In that situation, the record makes clear that Plaintiff is disabled and entitled to receive payments. *Varney v. Secretary of HHS,* 859 F.2d 1396, 1399 (9th Cir., 1988); *Benecke, supra*, 379 F.3d at 595.

Because of the Court's resolution of this case, the Court need not address arguments that the Administrative Law Judge erred in his treatment of Plaintiff's depression.

///

///

///

1    In accordance with the foregoing, the decision of the Commissioner is

2  reversed, and the matter is remanded for the payment of benefits.

3

4    DATED:   February 11, 2013

5

6    _____

     RALPH ZAREFSKY

7    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28